IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ZEMENCO, INC.,
    Plaintiff

  v.           CIVIL ACTION NO. 03-175 ERIE

DEVELOPERS DIVERSIFIED
REALTY CORPORATION,
    Defendant

STATUS CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, June 2, 2005.

APPEARANCES:
    VASILIOS NACOPOULOS, Esquire, (via Phone),
    appearing on behalf of the Plaintiff.

    ERIC P. REIF, Esquire, (via Phone), appearing on

     behalf of the Plaintiff.

     W. PATRICK DELANEY, Esquire, (via Phone), appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1     P R O C E E D I N G S

2

3     (Whereupon, the proceedings began at 1:30 p.m., on

4  Thursday, June 2, 2005, in Judge's Chambers.)

5

6     THE COURT:  Gentlemen, this is Judge McLaughlin, I

7  wanted to get you on the phone here to try to figure out where

8  this counsel situation is.  And in no particular order of

9  importance, let's start with this question.  My understanding

10  is that there had been some misunderstanding between Mr.

11  Nacopoulos and Mr. Reif concerning whether or not a lien was

12  being asserted on the file?

13     MR. NACOPOULOS:  I have an update for you on that

14  subject, this is Attorney Bill Nacopoulos.

15      THE COURT:  What is it?

16      MR. NACOPOULOS:  My firm received four banker's

17  boxes of files from Attorney Reif's office the day before

18  yesterday and four more yesterday.  Hopefully, Mr. Zafiropolous

19  here will be reviewing those boxes to insure that the complete

20  files have been provided.  So, hopefully, that's the case and

21  that issue is moot.

22      MR. REIF:  Judge, in this regard we have forwarded

23  the files.  We kept copies of pleadings, correspondence and

24  that type of thing.  But other than my personal notes, that

25  type of thing, the complete file has been provided.  And with

3

1  regard to the lien issue, as indicated in my letter to the

2  court, we received a demand to release those files on May 19th.

3  I was on vacation at the time.  We in fact informed Mr.

4  Nacopoulos we would not do that without the appropriate

5  authorizations.  We in fact then received those authorizations.

6  In addition, we were getting conflicting messages, we were told

7  in the condemnation action they were going to object to our

8  motion to withdraw as counsel and, of course, we could not turn

9  over the files until we were granted leave to withdraw as

10  counsel.  We were subsequently informed that there would be no

11  objection to our motion to withdraw in the condemnation, which

12  motion has now been filed.  And the files were sent out last

13  Friday.

14         THE COURT:  All right.

15         MR. NACOPOULOS:  I don't want to belabor the point,

16  I think it's moot.  Just to clarify, the only motion to

17  withdraw we had an opportunity to object to was in the

18  condemnation action, that was after the motion to withdraw was

19  already filed in your court.

20         THE COURT:  That may very well be.  Didn't you

21  indicate, Mr. Reif, you had forwarded a copy of the motion to

22  your client on May 4th?

23         MR. REIF:  The time line, your Honor, is this.  On

24  April 21, 2005 -- I'm happy to provide the court with copies of

25  the documents.


4

1         THE COURT:  I don't need that.

2      MR. REIF: I wrote to Mr. Zafiropolous and informed

3   him at that time that our firm would be filing a motion for

4   leave to withdraw in May. On May 4th I faxed both of our

5   motions, the motion for leave to withdraw and the motion asking

6   that the date for the filing of the pretrial statements be

7   moved back, both to Mr. Nacopoulos and I e-mailed that to Mr.

8   Zafiropolous. Moreover, I spoke with Mr. Zafiropolous that day

9   and told him that it would be presented, or that it would be

10  filed. His remark was, well, if you can wait until 2 o'clock,

11  we may have other counsel. But that is up to you. I said no,

12  we're going to go forward with the filing of these motions. On

13  May 9th I faxed the letter to both Mr. Nacopoulos and Mr.

14  Zafiropolous informing them that the motions had been granted.

15  On May 10th I faxed them copies of the orders. On May 17th Mr.

16  Nacopoulos, again while I was on vacation, sent a letter asking

17  our firm to file a pleading with the court asking that

18  additional time be granted for them to locate substitute

19  counsel. I informed Mr. Nacopoulos that we were no longer

20  counsel, that we were not prepared to undertake that, that he

21  should do it or have other counsel do it. Then on May 19th we

22  received a demand to release the files. But that is the time

23  line, your Honor.

24          THE COURT: All right, that's helpful. Now, let's

25  start to zero in on the big question here. And the question

                                5

1  is, Mr. Nacopoulos, have you and/or your client, have you been

2  successful in locating new permanent counsel on this case?

3          MR. NACOPOULOS: Not quite yet. We're in the middle

4  of negotiating with an attorney from Meyer, Unkovic. We have

5  not finalized our engagement with them. And they were

6  interested in participating in this conversation, however, they

7  felt at the last minute this morning that because they have not

8  finalized the engagement, they didn't want to participate in

9  this conference call.

10          THE COURT: I don't think that's unreasonable.

11          MR. NACOPOULOS: So we were very close. Also, with

12  the firm of Blumling & Gusky, however, they backed out of the

13  representation as well. I might add that was after discussing

14  the case with Attorney Reif.

15          THE COURT: All right.

16          MR. NACOPOULOS: I also wanted to add, judge, if

17  you'll permit me, that I received the motion, copies of the

18  motion to withdraw under Attorney Reif's letterhead, which

19  specifically stated that they were already filed.  So neither

20  Andy Zafiropolous or myself had any input or were able to

21  review those motions before they were filed.  We were also

22  given no copies of any correspondence regarding those motions.

23       THE COURT:  Let me ask kind of a practical question

24  then.  Assuming that you didn't get adequate, if any, advanced

25  notice sufficient for you to object, are you telling me post

6

1  hoc, are you asking me now to reconsider my previous order

2  releasing him from the case?

3       MR. NACOPOULOS:  No, judge, because Andy

4  Zafiropolous and Zemenco have no confidence whatsoever in Mr.

5  Reif continuing to represent their interests.

6       THE COURT:  Well, then, whether you got notice or

7  didn't get notice is a moot point because you're not moving --

8       MR. REIF:  Yes, your Honor, they had notice.

9       THE COURT:  I don't want to go down that road

10  anymore.  That order is in, I'm not going to change it, it is

11  what it is.  Let me make a couple observations.  This is an old

12  case. And I'm always sympathetic with, generally sympathetic

13  with clients who are trying to obtain counsel, particularly in

14  situations where there has been a parting of the ways. Which,

15  by the way, one of the reasons that were represented by Mr.

16  Reif and his firm is they weren't being paid. Which is one of

17  the reasons that I often, among others, will grant a motion to

18  withdraw. But that being said, the ball is in your court, you

19  now apparently have contacted two or three attorneys, the first

20  two I guess weren't interested in taking the case after looking

21  at it. You have another one who is mulling it over, and I do

22  not want to know or nor would it be appropriate for me to know

23  the whys and wherefores of the difficulty of landing new

24  counsel here. But it's enough for me to say this. That the

25  problem ultimately is yours, Mr. Nacopoulos. And I do not want

7

1  this case inordinately delayed while you try to get counsel.

2      MR. NACOPOULOS: I agree, your Honor. In fact, at

3  the very moment that we realized Attorney Reif was not going to

4  adequately represent Zemenco's interest, we immediately

5  contacted people that we knew to get references and we

6   immediately set up meetings with Attorney Blumling and others.

7   We were very diligent in that regard.

8           THE COURT:  What did you want to say, Mr. Reif?

9           MR. REIF:  I just wanted to say with regard to this,

10  it doesn't even merit a response, the adequate representation,

11  your Honor is familiar with the case much more so than Mr.

12  Nacopoulos.

13          THE COURT:  I am.

14          MR. REIF:  And your Honor is aware of the work and

15  the expense of discovery that has gone into it.

16          THE COURT:  I am.

17          MR. REIF:  We have devoted a lot of time and expense

18  to it, advancing the interests of this file.  For that matter,

19  they have all the discovery, they have briefs filed in

20  connection with the motions for summary judgment.  They have

21  appendices, it would seem to me that gives them a substantial

22  leg up.  With regard to adequate representation, if the idea is

23  we are to continue this representation indefinitely without

24  being paid and without the ability to retain and keep experts,

25  then I guess we have different views.

1          MR. NACOPOULOS:  That's absolutely not our

2   intention.  The critical fact, your Honor, is that we be able

3   to be involved in forming our ability or inability to retain

4   new counsel.  We would ask that at this point you don't forget

5   that you granted two motions.  There was a motion to withdraw

6   and a motion to amend the case management order.  We would have

7   requested much more time in order to find counsel and have that

8   counsel inform the court of the timing that it needed to get up

9   to speed on the case.  I don't think it's reasonable to expect

10  a new attorney to come in and in 30 days get up to speed on a

11  case, which is eight file boxes big, is just inconceivable.

12         THE COURT:  It's a big case.

13         MR. NACOPOULOS:  It's a big case and Attorney Reif

14  might be very conversant with it and your Honor might be very

15  conversant with the case, but a new attorney would first want

16  to evaluate the case and then get conversant with the case.

17         THE COURT:  The reason we're here today, Mr.

18  Nacopoulos, is because of your client.  Let me remind you

19  that's why we're here, because there has been a falling out on

20  your client's part with his former lawyer and he apparently is

21  having difficulty getting a new one.  All right, now I'm going

22  to move to scheduling matters.  This case will be set for

23  argument on what date, Becky?

24           THE CLERK:  June 17th.

25           THE COURT:  And you now find yourself in the

9

1  position where if you don't have new counsel on board, and let

2  alone someone who has gone through the file and would be in a

3  position to argue this thing.  My view of it is this.  Both

4  briefs are filed.  This is not going to require someone to go

5  through the entire file with a fine tooth comb.  It is going to

6  require competent counsel to come up to speed on the legal and

7  factual issues that are driving the motion for summary

8  judgment.  Number one.  I do not think that's an endless period

9  of time.  In order to make sure of an even playing field here,

10  I'm inclined to move that argument date.  But I'm not going to

11  have a floating date that just goes on interminably.  I am

12  going to give you 30 days from today within which to obtain --

13  let me actually grab my calendar, I want to look at the

14  calendar before I say anything.

15      MR. DELANEY: Judge, this is Pat Delaney.

16      THE COURT: Do you have anything to say?

17      MR. DELANEY: Other than I'm anxious to get the case

18  prepared and at least argued.

19      THE COURT: Refresh my recollection because I have

20  about 15 cases on my desk here with motions to dismiss and

21  motions for summary judgment and they tend to run together.

22  What are the driving issues that push this summary judgment?

23      MR. DELANEY: If you remember we had, I don't have

24  the summary judgment brief in front of me, but we had the issue

25  of petitioning immunity --

10

1      THE COURT: First Amendment.

2      MR. DELANEY: We have the issue that all of the

3  plaintiff's damages arise from a condemnation action. And we

4  have a statute of limitations issue on any other, not any other

5  cause of action. What I was going to say, you're correct,

6  these issues were argued once.

7      THE COURT: These are pure questions of law.

8      MR. DELANEY: Pretty much. They were argued once, I

9   was going to let counsel know that I have a transcript of Mr.

10  Reif's argument in the first argument, I'll share with

11  Zemenco's counsel, I don't think that is part of the record

12  anywhere, I'm not sure.  Then we took just one additional

13  deposition and came back and renewed the motions for summary

14  judgment.  It really is almost an appellate sort of argument.

15  Discovery is closed, so there's a record.  There are deposition

16  transcripts, there are appendices that have been filed.  And

17  it's something that might take a couple of weeks to get up to

18  speed once you're settled in.  But the point I was going to

19  raise is one month from today is a Saturday, the July 4th

20  weekend.

21          THE COURT:  Forget about that, I now have my

22  calendar in my hand.

23          MR. DELANEY:  July 4th is a Monday and July 2nd is a

24  Saturday.

25          THE COURT:  One second, if you could bear with me.


                                  11


1   When did I grant the motion to withdraw, what was the date of

2   that?

3        MR. NACOPOULOS: I believe May 5th or May 9th.

4        MR. REIF: May 9th, your Honor.

5        THE COURT: All right. This is what I'm going to

6   do. This case is going to be set, I'm going to push it far

7   enough out to get new counsel and permit new counsel to get up

8   to speed. This case is set for argument on July 29th at 9 a.m.

9   in my courtroom. And let me add that the argument is going to

10  take place regardless of the status of counsel at that time.

11  And I put it out far enough under the presumption you're going

12  to be able to get counsel. All right, what's going on with the

13  condemnation case?

14       MR. DELANEY: My understanding is that Tim Sennett,

15  who represents Summit Township in that action, there was a

16  hearing scheduled for I think May and it was postponed because

17  Zemenco did not file an expert report, valuation report. And

18  that the hearing, my last information was the hearing is

19  indefinitely postponed. I bring that to your attention, you

20  may remember that if Zemenco prevails in this condemnation

21  case, if they get more than $287,000, they got initially from

22  the condemnation action, my client ends up paying that under an

23  indemnity agreement. So that condemnation action has a

24  significant impact on the damage claim in this case.

25          MR. REIF:  The only thing I wanted to say, Mr.

                                  12

1  Delaney is with regard to the status of the condemnation.  Mr.

2  Sennett filed a motion to continue that, to continue that Board

3  of View hearing which had been established indefinitely because

4  we were coming up on that hearing date, and we were not able to

5  furnish him with an expert's report.

6          THE COURT:  That has not even been rescheduled, is

7  that right?

8          MR. REIF:  That is correct.

9          THE COURT:  Mr. Nacopoulos, are you looking -- I

10 presume you're looking for new counsel in the condemnation

11 matter as well?

12         MR. NACOPOULOS:  That's correct, your Honor.

13         THE COURT:  All right, counsel, I think that's as

14 much as I need to do today.  I simply wish you good luck in

15 obtaining your new counsel, I presume you're going to be able

16 to do that.

17         MR. NACOPOULOS:  Will new counsel have an

18 opportunity to discuss with you the remaining deadlines, such

19  as pretrial statements?

20           THE COURT:  I'm not going to do anything on that

21  today in anticipation of someone else coming on board.  It's

22  sufficient for my purposes today to push the argument date out

23  far enough and then either probably at that argument I'll take

24  up the issue anew.  But I will say this, and you can relay this

25  to new counsel when they get on board.  Obviously, one of two

13

1  things are going to happen here.  Either the motion is going to

2  be denied or the motion is going to be granted.  And given the

3  age of this case, I do not like to have three-year-old cases on

4  my docket, this is quickly aging into that, I'm going to move

5  on that motion very expeditiously.  If it's granted, well then

6  it's granted.  If it's denied, it would be my intention to get

7  this case tried with great expedition, at least started

8  sometime during my late fall term of court.  But that's an

9  issue that can await new counsel.  All right, thank you.

10

11           (Whereupon, at 1:50 p.m., the proceedings were

12  concluded.)

13

14                    - - -

15

16

17

18

19

20

21

22

23

24

25


                                    14


1                CERTIFICATE

2

3

4     I, Ronald J. Bench, certify that the foregoing is a

5  correct transcript from the record of proceedings in the

6  above-entitled matter.

7

8

9

10  _____

11  Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25