```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3   ZEMENCO, INC.,                    :
              Plaintiff                :
 4                                     :
         v.                            :      No. 03-175-Erie
 5                                     :
     DIVERSIFIED REALTY                :
 6   CORPORATION,                      :
              Defendant                :
 7

 8

 9         Motion Hearing in the above-captioned matter

10      held on June 24, 2004, commencing at 2:19 p.m.,

11      before the Honorable Sean J. McLaughlin, at the United

12      States Courthouse, Courtroom C, 617 State Street, Erie,

13      Pennsylvania 16501.

14

15

16

17   For the Plaintiff:   (Via telephone)
         Eric P. Reif, Esquire
18

19

20   For the Defendant:
         W. Patrick Delaney, Esquire
21

22

23

24

25              Reported by Janis L. Ferguson, RPR
```

```
 1                         I N D E X
 2
 3   TRANSCRIPT OF THE PROCEEDINGS  . . . . . . . . . . . . . . .   3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:03-cv-00175-SJM   Document 61   Filed 12/05/2005   Page 2 of 14

```
 1              THE COURT:  This is Judge McLaughlin.  How are
 2   you?
 3              MR. REIF:  Fine.  Thank you, Your Honor.
 4              THE COURT:  Okay.  This shouldn't take very long
 5   at all.  I'm here with Mr. Delaney, and I have a Motion for
 6   Leave to Amend Answer, to Plead Additional Affirmative
 7   Defense.
 8              MR. REIF:  Yes.
 9              THE COURT:  For the record, the defense being the
10   1st and 14th Amendments.  The rights provided under those
11   Amendments to petition for a redress of grievance.  And,
12   basically, to make a long story short, the motions are
13   filed, and there is an objection by the Plaintiff to the
14   amendment.  Is that right?
15              MR. REIF:  That's correct, Your Honor.
16              THE COURT:  All right. Why don't you tell me
17   about that.
18              MR. REIF:  Well, first of all, Your Honor, I did
19   not think -- I did not think in good conscience, in
20   representing my client, that I could simply consent to that,
21   because --
22              THE COURT:  I understand what you're saying.
23              MR. REIF:  Because if that defense were to apply,
24   of course, that would be the end of our claim.  But I
25   realize, of course, that the decision of whether or not to
```

1   allow that amendment is a matter within your discretion.
2   But our position, very simply, as is stated in our brief, is
3   that it is certainly untimely under the provisions of Rules
4   8 and 12 of the Federal Rules of Civil Procedure.
5              Moreover, this is not a -- this is not a
6   situation --
7              THE COURT:  This is a pure question of law.
8              MR. REIF:  It's a pure question of law.  But the
9   other point I wanted to make, Your Honor, it's not as if
10  these are newly discovered facts or anything that
11  Diversified was not thoroughly conversant with vis-a-vis its
12  dealings with Summit Township at the time its Answer was
13  filed on August 29, 2003, some 10 months ago.
14             And for -- based on that reasoning and the
15  cases that are cited in our memorandum, we have taken the
16  position that the Court certainly has the right to view that
17  defense as having been waived, because it was not pleaded as
18  an affirmative defense in the Answer.
19             THE COURT:  What do you want to say about this,
20  Mr. Delaney?
21             MR. DELANEY:  Your Honor, I don't think that,
22  first of all, that there's any prejudice to the Plaintiff
23  with regard to the late amendment of the Answer.  We have
24  only begun to conduct discovery in the case, so it isn't as
25  if we've invested a great deal of time, not knowing about

```
 1   the -- this particular defense.
 2              I have to say, I think it's a rather obscure
 3   defense, and it took me several readings of the Complaint.
 4   I came to the table a little bit late to this case.  I
 5   wasn't here initially.  But it took me a couple of readings
 6   of the Complaint to even think about it and to realize that
 7   what the gist of Plaintiff's argument was; was that we
 8   sought a condemnation of property that caused them harm.
 9              So I don't think there's any prejudice.  I
10   think the rules allow for liberal amendment of both
11   Complaints and Answers, and I don't think that this creates
12   any undue hardship on the Plaintiff.  And I think it's an
13   inapplicable, inappropriate affirmative offense.
14           THE COURT:  Anything else you want to tell me, Mr.
15   Reif?  I think I have got the lay of the land.
16           MR. REIF:  I was going to say, Your Honor, as a
17   matter of principle, I have always objected to obscure
18   defenses.
19           THE COURT:  So have I, because I have a hard time
20   figuring out what they are.  Sometimes I have a hard time
21   figuring out what the nonobscure ones are.
22           MR. REIF:  Other than that, I really have nothing.
23           THE COURT:  Let me do this:  Let me get a quick
24   Order.
25              Presently pending before the Court is a
```

```
 1   Motion for Leave to Amend the Answer, to Plead Additional
 2   Affirmative Defense.  After argument on the same and
 3   consideration of papers that have been filed, both for and
 4   in opposition, the motion is granted.  Under Rule 15, the
 5   amendments are to be literally granted.
 6                In this particular case, I can see no
 7   prejudice whatsoever.  I don't see any bad faith or willful
 8   dilatory conduct in failing to file the amendment.  And in
 9   any event, it strikes me that this is in all likelihood a
10   pure question of law which is appropriately raised and at
11   some point will receive further judicial attention.
12                Okay.  So much for that.  I'm not trying to
13   get the cart too far in front of the horse here, but does
14   this principle of 1st and 14th Amendment projection apply to
15   private individuals as well as public entities and
16   individuals?
17           MR. DELANEY:  Yes, it, does.  In fact, as I
18   understand it --
19           THE COURT:  Applies to everyone or every entity
20   that would petition the government for redress?
21           MR. DELANEY:  Yes, Judge, it's an option -- it's
22   an extension of the antitrust law which the Noyer Pennington
23   [sic] require --
24           THE COURT:  I thought this was Noyer Pennington
25   under a different garb.
```

```
 1              MR. DELANEY:  Darn if there isn't a Third Circuit
 2   case almost on point.  And that caused me, in anticipation
 3   of this meeting, to go back.  And I'll be very frank with
 4   you.  I think that the purchaser, under the contract, which
 5   by assignment was Developers Diversified, had a right to
 6   terminate, and I don't think that that -- that there is a
 7   solid argument on the part of the Plaintiff for breach of
 8   contract because of termination.
 9              I mean, the contract contemplates there might
10   be a termination.  And I think that when it comes to this
11   issue of promoting the condemnation of this strip of land, I
12   think that Mr. Reif is correct; that if this immunity or
13   privilege applies, I think the Plaintiff is out of court.
14              MR. REIF:  Well, Your Honor --
15              THE COURT:  I'm not sure Mr. Reif said that, did
16   you?
17              MR. REIF:  I would disagree with that in the sense
18   that our Complaint is not based entirely on the idea that
19   actions taken in promoting this condemnation were improper.
20   Our underlying claim is that there was no legitimate basis
21   with regard to this Mandy Lane extension.  That is not even
22   referenced in Paragraph 9 of the underlying contract
23   documents that speak solely to the obligation of my client
24   to agree to an extension of Dobbs Drive across any portion
25   of his property.  Had a legitimate right to declare the
```

1  contract in default in the first instance.  So it's not --
2  it's not correct that we are pointing solely to actions
3  taken to then have this property condemned.
4         THE COURT:  Well, I take both your points, but for
5  the -- naturally, for present purposes for today, all I had
6  to determine, whether the defense gets on the field.  I
7  don't have to determine whether it goes anywhere.
8         MR. REIF:  Oh, I certainly understand that.
9         THE COURT:  I do understand your position.  Let me
10 ask you some practical questions, because I do not remember.
11 Where is discovery in this case?
12        MR. REIF:  Well, Judge, it has taken us a while to
13 get going, but in terms of the discovery, we have exchanged
14 initial disclosures.  I have submitted an initial request
15 for production.  I have also noticed four depositions, as I
16 recall, that were scheduled for the 14th and 15th.  I don't
17 have my calendar in front of me.  But I believe those are
18 now going to be the 15th and 16th.
19             One of the problems that we have had, I had
20 scheduled earlier depositions, but a number of these
21 individuals who were intimately involved with this project
22 are no longer employees of Diversified.  For example, one of
23 the first people that I want to depose is Mr. VanWinkle, who
24 is the attorney, the former in-house attorney with
25 Diversified, that wrote the letter and a number of other

1  important documents saying that the contract is in default.
2  I have had Mr. Delaney -- and it's my understanding that he
3  was going to try to inform me today of not only where Mr.
4  VanWinkle is -- and I think I know that, simply having gone
5  on the internet -- but whether or not they can voluntarily
6  produce him in Erie or whether or not we'll have to do that
7  in Ohio.  In any event --
8              (Discussion held off the record.)
9              MR. REIF:  But aside from that, I have subpoenaed
10  Mr. Scott, who entered into the underlying purchase
11  agreement with my client, from Scott Development, for a
12  deposition on the 15th.  I have subpoenaed Greg Rubino, the
13  realtor.  I had noticed Mr. Van Winkle.  And if I can just
14  get my calendar.  I believe there was one other.
15              MR. DELANEY:  That was Gary Howe.  Maybe you
16  haven't noticed him.  But you have served him.
17              MR. REIF:  Right.  One of the things I planned to
18  do today, although, you know, I'm sure Mr. Delaney would
19  provide that information in any event, is to get out a very
20  short set of interrogatories to ask Diversified where these
21  various people are that are -- a number of them are
22  identified in their initial disclosure as having pertinent
23  information who are no longer employees.
24              THE COURT:  Why don't you just take the shortest
25  distance between two points, and rather than get out a set

```
 1   of interrogatories, why don't you just ask them.
 2            MR. REIF:  I will do that, and I will send you,
 3   Pat, a letter today inquiring about -- there are probably
 4   four or five.  And, Your Honor, to answer your question more
 5   fully, in terms of our deposition discovery, other than the
 6   depositions I have already noticed, I think that I will
 7   probably need one or two depositions of Summit Township
 8   representatives and probably an additional one or two
 9   depositions of other Diversified representatives, such as a
10   fellow by the name of Norm Elbin (phonetic) who was
11   intimately involved in this project.
12            THE COURT:  So is that all, by way of saying that
13   it's -- well, let me ask you, can you get all this done by
14   your extension, which I think is 8/31?
15            MR. REIF:  Well, you know, that -- because of the
16   difficulty that -- and I don't mean to imply that Mr.
17   Delaney has not been cooperative.  That's not the case at
18   all.  But we have had difficulty in tracking these people
19   down.  So it may not -- I don't know, Pat, what your
20   vacation schedule is or whether witnesses will be away,
21   which is a problem you always encounter over the summer
22   months; whether we will be able to do that.
23            THE COURT:  What do you have to do deponent-wise?
24   Anything?
25            MR. DELANEY:  Maybe two people.  I think that --
```

```
 1  the principals of Zemenco.
 2          THE COURT:  Well, put it this way:  If there's
 3  five or six people or seven people that remain to be done
 4  and you need to do a couple and you need to do five or six,
 5  and if Mr. Delaney can supply you with the whereabouts --
 6  and you may not know the whereabouts of some of these
 7  people.  I don't know.  But if that information is promptly
 8  turned over, absent summer schedules that just conflict up
 9  and down the line, I don't see why this can't be completed
10  by the end of August.
11          MR. REIF:  I'm not -- Your Honor, I don't either.
12  I'm just saying in response to your question, can this be
13  done, I just don't want to represent to the Court with
14  absolute assurance --
15          THE COURT:  Well, I understand that.  I mean, if
16  something happens, and despite everybody's best efforts,
17  there's a loose thread that needs to be snipped off after
18  8/31, I'll let you do it.  But for present purposes, it's
19  accurate to say that everybody can see the light at the end
20  of the discovery tunnel, right?
21          MR. DELANEY:  I think so.
22          MR. REIF:  I think that's correct.
23          THE COURT:  Okay.  Off the record.
24          (Discussion held off the record.)
25          THE COURT:  What were you saying?
```

```
 1              MR. DELANEY:  I think that this is a case that
 2   will be disposed of on motions.  I think that the contract
 3   indicates that Developers had the right to terminate.  I
 4   think the notice of termination clearly says we are
 5   terminating pursuant to the terms of -- and conditions of
 6   the contract and because we think you may have been in
 7   default.
 8              THE COURT:  Well, I mean, look it, the reality is
 9   you can file a motion for summary judgment of any kind you
10   want, if you think that's the case.  What are you
11   suggesting?  You want to file a motion to obviate what you
12   think would be all this other work?  You can do it, but --
13              MR. DELANEY:  I do.  I don't -- for example -- and
14   I haven't thought through what Mr. Reif is trying to do, but
15   I don't know why anything Summit Township people have to say
16   is relevant or material to this case.
17              THE COURT:  Well, why don't you guys work -- I
18   mean, work that -- I mean, really, if the -- if these folks
19   are noticed, they are not your client.  The ball is in their
20   court to come in and object if they don't think they have
21   anything germane to say.
22              MR. DELANEY:  Well, I understand.  We'll get a
23   motion together and file it --
24              MR. REIF:  But, Your Honor, again, I strongly
25   disagree that we can dispose of this case on a motion for
```

```
 1  summary judgment.
 2          THE COURT:  Well, you may not be able to.  I'm not
 3  saying you can.  I'm not saying you can't.  But bear this in
 4  mind too:  If you go off and file a motion for summary
 5  judgment which is generally premature, because some of this
 6  record development may have been material, you have also
 7  wasted everybody's time.
 8          MR. REIF:  Well, that's my concern, Your Honor.
 9          THE COURT:  So, you know, given the short amount
10  of time before the end of discovery, I can see into --
11  unless there's a real good reason it becomes crystal clear,
12  it seems to make most sense to go finish your discovery.
13  You only have another 60 days.  And then if you think you
14  can move.  But then there won't be anybody coming back and
15  saying we need more discovery, because you'll have done it.
16              Now, go off the record.
17          (Discussion held off the record.)
18          THE COURT:  Okay.  I don't have anything else.  Do
19  you have anything else?
20          MR. DELANEY:  I don't, Your Honor.
21          THE COURT:  How about you down there in
22  Pittsburgh?
23          MR. REIF:  Pat, are you going to get back to me on
24  Mr. VanWinkle?
25          MR. DELANEY:  Yes.  I understand we can produce
```

```
 1   him.  The question is whether you and I should go to
 2   Cleveland, because he doesn't work for Developers
 3   Diversified any longer, and he was going to get back to my
 4   contact today.  Would you mind going to Cleveland, if we had
 5   to?
 6           MR. REIF:  No, I don't mind going to Cleveland.
 7   But, again, I will be away the first week in July.  I just
 8   want to continue to get these things scheduled as promptly
 9   as we can.
10           MR. DELANEY:  Right.  I'll doublecheck with them
11   when I get back to the office and call you before 3:30.
12           THE COURT:  We're all done.
13
14                        * * * * *
15
16
17
18
19
20
21
22
23
24
25
```