**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  05-4896

ZEMENCO, INC.,
a corporation

v.

DEVELOPERS DIVERSIFIED
REALTY CORPORATION,
a corporation

Zemenco, Inc.,

Appellant

_____

On Appeal From the United States District Court
for the Western District of Pennsylvania
District Court No.:  03-cv-00175E
District Judge: The Honorable Sean J. McLaughlin

_____

Argued October 24, 2006

Before:  SMITH, FISHER, and COWEN, *Circuit Judges*

(Filed: November 9, 2006 )

Counsel:     Joseph A. Katarincic (Argued)
             Thorp, Reed & Armstrong
             301 Grant Street
             One Oxford Center, 14th Floor
             Pittsburgh, PA 15219
             *Counsel for Appellant*

Lisa Smith Presta (Argued)
MacDonald, Illig, Jones & Britton
100 State Street
Suite 700
Erie, PA 16507
*Counsel for Appellee*

---

OPINION

---

SMITH, *Circuit Judge*.

Zemenco, a Pennsylvania corporation, owned approximately forty-six acres of land in Summit Township, Pennsylvania, (the "Township"), upon which it operated a manufactured home park. Developers Diversified Realty Corporation ("DDRC"), an Ohio corporation, constructed a shopping center, Peach Street Square, adjacent to Zemenco's land. The Township had notified DDRC that it would withhold further approval of retail occupancy permits for Peach Street Square until DDRC provided additional public access to the shopping center. Zemenco alleges that DDRC hatched a complex plan to construct an access road to Peach Street Square over Zemenco's land which ultimately led to the condemnation of a portion of Zemenco's land by the Township. Zemenco originally sued DDRC on a breach of contract theory and only later amended its Complaint to add claims based on fraud. The District Court granted DDRC's Motion for Summary Judgment, holding that Zemenco's fraud claims were time-barred and that its contractual claims had been satisfied according to the terms of a liquidated

damages clause in the relevant contract.  We will affirm.[1]

### I.

Zemenco alleges that DDRC conspired with Scott's Development Company ("Scott's"), which also owned land adjacent to Zemenco's land, to fraudulently deprive Zemenco of its ownership of the disputed parcel of land without adequate compensation. On November 14, 1998, Zemenco entered into a contract to sell its forty-six acres to Scott's (the "Zemenco-Scott's Contract") for $3,980,000.  According to Zemenco, it understood that Scott's planned to develop the land for the construction of a Target store. The final purchase was to take place in one year, with four $20,000 deposits to be placed by the buyer into an escrow account every ninety days.  The contract was assignable to third parties.

As part of the contract, Zemenco retained the right to use a sales lot on the land until the sale was complete.  Scott's also placed the following provision in the contract: "As an additional consideration from Seller to Purchaser for entering into this Agreement, Seller hereby agrees to allow Purchaser, at any time after the date of mutual execution hereof, to construct an extension of Downs Drive over and upon a portion of the Premises subject to the parties' mutual approval of the plans therefore, which approval shall not be unreasonably delayed or withheld."  Downs Drive was an east-west road that could

---

[1]The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant or denial of summary judgment.  *See, e.g., Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002).

provide access from Zemenco's land to Route 19, a major public thoroughfare.[2]  Finally, the contract provided: "If Purchaser defaults hereunder, Seller shall retain any of the Deposit then in its possession as full liquidated damages and Seller shall have no other recourse thereafter."

Meanwhile, also on November 14, 1998, and allegedly without Zemenco's knowledge, Scott's entered into a sales contract with DDRC for the sale of its land (the "Scott's-DDRC Contract").  This contract provided for an extension of Downs Drive over both Scott's land and Zemenco's land, to meet up with a new north-south road called Mandy Lane which would extend south from Peach Street Square into Zemenco's land. The intersection of Downs Drive and Mandy Lane thus was to occur on a corner of Zemenco's land, and would provide an access point between Peach Street Square and Route 19.

On November 20, 1998, Scott's assigned the Zemenco-Scott's Contract to DDRC. DDRC made its first $20,000 deposit payment pursuant to the Zemenco-Scott's Contract on or about December 3, 1998.  Zemenco has retained this $20,000 payment.

On February 4, 1999,  DDRC presented Zemenco with a Reciprocal Access Easement Agreement ("RAEA"), which provided for the extension of Downs Drive and construction of Mandy Lane.  Zemenco refused to sign the RAEA, claiming that it would destroy Zemenco's ability to use the sales lot as provided in the Zemenco-Scott's

---

[2]As described below, to reach Peach Street Square, Downs Drive would have to be connected to a north-south street.

Contract. Zemenco then demanded an immediate payment of $750,000 in return for

signing the RAEA. On May 28, 1999, DDRC cancelled the Zemenco-Scott's Contract,

claiming that Zemenco had unreasonably withheld approval for the extension of Down's

Drive and construction of Mandy Lane.

DDRC then sued Zemenco for breach of contract in Pennsylvania state court,

arguing that the Zemenco-Scott's Contract and Scott's-DDRC Contract should be read

together. DDRC claimed that these contracts gave DDRC a contractual right to extend

Downs Drive and construct Mandy Lane, and DDRC sought specific performance.

DDRC moved for a preliminary injunction and the state court denied this motion, holding

that the contracts were separable and that the Zemenco-Scott's Contract did not give

DDRC the contractual right to build Mandy Lane.[3]

Meanwhile, DDRC also petitioned the Township for condemnation of the corner

of Zemenco's land where Downs Drive and Mandy Lane were to intersect, a parcel of

approximately 4.25 acres. The Township held two public meetings on June 7, 1999, and

June 16, 1999. At the June 16 hearing, DDRC claimed a contractual right to both extend

Downs Drive and construct Mandy Lane. Zemenco contested DDRC's claims. The

Township Board of Supervisors then unanimously voted to condemn the 4.25 acre parcel

in the interest of providing an access point for Peach Street Square. Two of the three

Township Supervisors later testified that they did not know anything about the contract

---

[3]DDRC eventually abandoned this lawsuit following the condemnation described
below.

dispute between Zemenco and DDRC.  Zemenco received $287,000 in compensation,
which it alleges was inadequate.

On May 28, 2003, Zemenco filed a breach of contract action against DDRC in the
District Court.  On March 2, 2005, Zemenco amended its Complaint to add claims based
on the allegations that DDRC had fraudulently induced Zemenco to enter into the
Zemenco-Scott's Agreement and had conspired with Scott's to defraud Zemenco.

On October 10, 2005, the District Court granted DDRC's Motion for Summary
Judgment.  It held that: (1) Zemenco's fraud claims were time-barred by the applicable
two-year statute of limitations in Pennsylvania; (2) Zemenco could not establish that
DDRC's alleged wrongs proximately caused the Township to condemn Zemenco's land;
(3) Zemenco could not hold DDRC liable for its alleged misrepresentations to the
Township under the *Noerr-Pennington* doctrine; and (4) that pursuant to the liquidated
damages provision in the Zemenco-Scott's Contract, Zemenco's breach of contract claims
had been satisfied by the $20,000 deposit payment it had retained subsequent to DDRC's
cancellation of the sale.  Zemenco has contested all of these holdings on appeal.[4]

II.

The Pennsylvania statute of limitations for actions based in fraud is two years.  42

---

[4]Zemenco also argues that the District Court: (1) misplaced the burden of proof on
DDRC's Motion for Summary Judgment; (2) erroneously failed to construe the facts in
the light most favorable to Zemenco; (3) erroneously denied Zemenco's motion to compel
the filing of DDRC's concise statement of material facts; and (4) erroneously did not
deem admitted requests for admissions to which DDRC allegedly served untimely
responses.  We find no grounds for relief with respect to any of these issues.

Pa. Cons. Stat. Ann. § 5524(7). The limitations period begins to run when the "plaintiff learns or reasonably should have learned through the exercise of due diligence of the existence of the claim." *Beauty Time, Inc. v. VU Skin Sys., Inc.,* 118 F.3d 140, 148 (3d Cir. 1997) (applying Pennsylvania law). A plaintiff reasonably should have learned of a claim's existence when he "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Melley v. Pioneer Bank*, 834 A.2d 1191, 1201 (Pa. Super. Ct. 2003) (internal quotations and citations omitted). "Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Id.*

According to Zemenco, the ultimate wrong committed by DDRC was its misrepresentations to the Township that it had contracted for the necessary right to use Zemenco's land for Mandy Lane, which allegedly caused the Township to condemn Zemenco's land. Zemenco undisputedly was aware of this alleged wrong as of June 16, 1999, when DDRC represented its version of events at the commissioners' meeting, Zemenco disputed the veracity of DDRC's representations, and the commissioners nonetheless condemned Zemenco's property.

Because these critical facts clearly put Zemenco on notice of DDRC's alleged wrong as of June 16, 1999, Zemenco was aware at that point of the need to investigate a

possible fraud claim against DDRC.[5]  Accordingly, as a matter of law, the two-year

statute of limitations for Zemenco's fraud claims began to run, at the latest, on June 16,

1999.[6]  Consequently, because Zemenco did not file its fraud claims until February 28,

2005, the District Court properly dismissed Zemenco's fraud claims as time-barred.[7]

---

[5]Zemenco argues that it subsequently discovered additional facts that support its fraud
claims–such as the degree of cooperation between DDRC and Scott's prior to the
formation of the Zemenco-Scott's contract–and that there are genuine issues as to exactly
when Zemenco became aware of these facts.  However, even assuming that such genuine
issues exist, Zemenco was on notice of DDRC's alleged wrong as of June 16, 1999, when
the Township condemned Zemenco's land following the public hearing.  Accordingly,
because at that point Zemenco was aware of its injury and aware of the role that DDRC's
alleged misrepresentations had played in causing that injury, Zemenco had become aware
of the need to investigate its fraud claims.  Consequently, the statute of limitations began
to run at that time regardless of Zemenco's actual knowledge of the underlying facts of
the alleged fraud.
    Zemenco further argues that its delay in filing its fraud claims was reasonable
because previously Zemenco had been "focused" on defending against DDRC's breach of
contract action and petition for condemnation.  However, even assuming that there is a
genuine issue as to the reasonableness of Zemenco's failure to investigate a possible fraud
claim prior to June 16, 1999, once Zemenco's property was condemned by the Township
and DDRC abandoned its state court action, Zemenco could no longer claim that it was
reasonably focused on defending against DDRC's actions.  Accordingly, this argument
provides no basis to excuse Zemenco's lack of diligence in investigating its possible fraud
claims after that point.

[6]For purposes of this appeal, we need not address whether other facts of which
Zemenco was aware–such as Scott's assignment of the Zemenco-Scott's Contract to
DDRC six days after its formation, the reference to Zemenco's land in the Scott's-DDRC
Contract, and DDRC's cancellation of the Zemenco-Scott's Contract when Zemenco
refused to sign the RAEA–establish as a matter of law that the statute of limitations on
Zemenco's fraud claims began to run at an even earlier point.  Nonetheless, we note that
these other factors simply underscore the fact that Zemenco clearly was on notice of the
need to investigate its possible fraud claims against DDRC as of June 16, 1999.

[7]Because we hold that Zemenco's fraud claims were time-barred, we do not reach the
issue of whether DDRC's alleged misrepresentations caused the Township's

III.

In Pennsylvania, liquidated damages clauses are enforceable if at the time the

parties formed the contract, the amount of the liquidated damages constituted a

reasonable approximation of the expected loss. *Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d

157, 162 (Pa. Super. Ct. 1997).   Parties who agree to a proper liquidated damages clause

cannot later claim entitlement to actual damages.  *Id*.  Finally, a liquidated damages

clause that limits a seller's recovery to funds paid as a deposit is enforceable provided

that the resulting amount of damages is not so large as to amount to a penalty.  *See*

*Palmieri v. Partridge*, 853 A.2d 1076, 1080-81 (Pa. Super. Ct. 2004).

In light of *Palmieri*, the District Court properly concluded that the liquidated

damages clause in this case, which would allow Zemenco to retain any deposits paid in

the event that the sale was cancelled, was reasonable at the time that the parties formed

the contract.  Accordingly, the District Court properly concluded that Zemenco was

barred from claiming actual damages.[8]

---

condemnation of Zemenco's property, and similarly we do not reach the issue of whether
Zemenco's fraud claims should be dismissed under the *Noerr-Pennington* doctrine.

[8]Zemenco argues that in light of the actual damages it suffered, the $20,000 in
liquidated damages it received was unreasonable and unconscionable.  Zemenco,
however, is referring not to the damages it suffered as a result of the failure of the sale,
but rather the damages it suffered as a result of the condemnation.  Zemenco's theory is
that the Zemenco-Scott's Contract is relevant to these damages not because these
damages were caused by the failure of the sale, but rather because DDRC allegedly
conspired with Scott's to fraudulently induce Zemenco to enter into this contract and then
fraudulently misrepresented its contractual rights to the Township.  Consequently, these
damages do not arise from Zemenco's breach of contract claim, but rather its fraud

IV.

For the aforementioned reasons, Zemenco's fraud claims were properly dismissed as time-barred and its breach of contract claims were satisfied by its retention of the $20,000 deposit payment.  Accordingly, the judgment of the District Court will be affirmed.

---

claims, which were properly dismissed as time-barred.  In short, Zemenco has not shown that the liquidated damages clause was an unreasonable estimate at the time of contracting for the damages that would result from its breach of contract claims, as opposed to the damages that would result from its time-barred fraud claims.